FRANK O. BURDICK V. SONS AND DAUGHTERS OF PROTECTION.

FILED JANUARY 3, 1906. No. 14,063.

1. **Beneficial Associations: OFFICERS: SALARIES.** A fraternal benefit society, whose governing power in relation to fees and salaries to be allowed the officers of the order is vested in an executive committee, is not bound by acts of the members of the society, nor can a proposition, made to the delegates of a convention of the organization by one who is a candidate for office, relating to his fees, if elected, be regarded as a contract, in the event of his election, in the absence of any agreement with the governing body after such election.

2. **Estoppel.** One cannot attack the validity of a delegate meeting of a society where he participates in the meeting and becomes a candidate for one of the offices to be filled.

ERROR to the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Reversed with directions.*

*L. D. Holmes,* for plaintiff in error.

*Frank J. Kelly, contra.*

DUFFIE, C.

Sometime previous to January 16, 1901, the officers of the supreme lodge of the Sons and Daughters of Protection attempted to sell and transfer the membership of said order and all its property and records to the Bankers' Union of the World. Many of the members were dissatis-

fied with this attempted transfer, and delegates from about 40 of the subordinate lodges met in the city of Lincoln January 16, 1901, for the purpose of resisting said sale and to perpetuate their organization. At this meeting it was determined to reorganize the order and to elect a new set of supreme officers. The old officers of the supreme lodge sent in their resignations to this meeting and a new set of supreme officers were elected by the members present. Frank O. Burdick was elected medical director, and, as such, became a member of the executive committee, which, under the constitution, is made up of the supreme president, supreme vice-president, supreme secretary, supreme medical director and supreme counselor. Previous to his election he was nominated for supreme president of the order, and, in a speech declining that position, it is asserted that he proposed, if elected supreme medical director, to examine the first 1,000 applicants for admission or reinstatement free of charge. At a meeting of the executive committee held after his election, Dr. Lewis, who had also been a candidate for the office of medical director, offered to examine 500 of the first applicants free of charge, and this proposition was taken to Dr. Burdick, who was urged to accept it, the order then being without funds or means of any kind, and it was thought that by appointing Dr. Lewis assistant medical director his influence in building up the order would be a help to the society. Dr. Burdick promised to take the matter under consideration, but afterwards refused to appoint Dr. Lewis an assistant. At this meeting of the executive committee some donations were made to the society, and several members made loans of $25, which were to be repaid if the society grew in strength and was able to make repayment. O. C. Bell, who was elected secretary, gave up a position he was then holding in another organization with a salary of $100 a month, and agreed to serve as secretary of the society for $75 a month, $50 to be paid in cash, and $25 of each month's salary to run for six months or until the order accumulated sufficient funds to make payment. It was thoroughly understood, not only

by the delegates who attended the meeting, but by the executive committee, that the order was wholly without means, and that considerable sacrifice would have to be made by the different members of the order to get it again on its feet and make it a going concern; and we have no doubt from the evidence in the record that it was the understanding of the delegates who elected Dr. Burdick to his office, and of the executive committee, that he had assumed as his share in rebuilding the organization to examine free of charge the first 1,000 applicants for admission or reinstatement, but no contract to that effect was made with him by the executive committee who, under the constitution, have exclusive authority to fix and determine the salaries and compensation of the supreme officers. Under the constitution of the society as existing in 1901, the plaintiff's term of office would not expire until the second Tuesday of May, 1904, but at a subsequent meeting of the subordinate lodges the constitution was so changed as to make the plaintiff's term of office, and the term of all other supreme officers of the order, expire on the second Tuesday of October, 1902, on which date one Dr. Michael was elected to succeed him. During the time he held his office, the plaintiff examined 1,630 applicants, the fee in each case being 50 cents. He has been paid the sum of $315, and no more; and he brought this action, alleging in his petition, which is in two counts, the fact of his election to the office; that his term was to extend to the second Tuesday of May, 1904, and that the society, at a meeting illegally called and held, attempted to change the constitution so as to make his term of office expire on the second Tuesday of October, 1902, at which date a successor was elected, and he was ousted from his office, to his damage in the sum of $2,500. In the second count of his petition he alleges his election to the office, that he examined during the time he served 1,630 applicants, for which he was entitled to a fee of 50 cents each, that he has been paid the sum of $315 only, leaving the sum of $500 still due and unpaid, and he asks judgment in the sum of $2,500 and interest. A trial was had

to the court without a jury, and the plaintiff's petition was dismissed. His motion for a new trial being overruled, he has brought the case here for review.

The evidence is entirely satisfactory to our minds that, prior to his election, the plaintiff publicly stated to the delegates in attendance at the meeting that he would examine, free of charge, the first 1,000 applicants, provided he was elected to the office of supreme medical director. Not only is this testified to in positive terms by two or three witnesses who heard the statement and the applause which followed it, but the record discloses facts and circumstances corroborating this testimony. If his election by the delegates present could be regarded as an acceptance of the plaintiff's proposition, still it would not amount to a contract, because by the constitution of the society his compensation must be fixed by the executive committee. A corporation whose governing power is vested in a board of directors is not bound by the acts of its stockholders. *Columbus Co. v. Hurford,* 1 Neb. 146. There is no showing in the record of any facts or circumstances which can be claimed as forming a legal contract made between the plaintiff and the executive committee, to the effect that he should examine free of charge the first 1,000, or any number of, applicants. The other members of the executive committee undoubtedly thought that the plaintiff would live up to his proposition and that no contract was necessary, but the court cannot accept for a contract a proposition which has been made by one party, but which has not been accepted or acted upon by the other party. We are of the opinion, therefore, that the court erred in not allowing Dr. Burdick $500, the regular fee for his examination of 1,000 applications.

His claim for $2,500 damages is based upon the proposition that his regular term extended to the second Tuesday of May, 1904; that at a special meeting of the supreme lodge held in May, 1901, the constitution was so changed as to make his office expire in October, 1902; that this May meeting was irregular and illegal, in that it was called on

petition of two-thirds instead of three-fourths of the members, and his claim is that he was illegally ousted from office. We do not care to spend time in discussing this proposition. Suffice to say, that Dr. Burdick attended that meeting, participated therein and was a candidate for re-election to the office of supreme medical director. The law is clear that he cannot attack the validity of a meeting in which he participated, and to which he gave countenance by being a candidate for one of the offices filled by the meeting. We recommend that the cause be remanded to the district court, with directions to enter a judgment in favor of the plaintiff for $500 and for costs.

ALBERT and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the cause is remanded to the district court, with directions to enter a judgment in favor of the plaintiff for $500 and for costs.

REVERSED.